Peter WHITEMAN and Second
Injury Fund, Respondents,

v.

DEL–JEN CONSTRUCTION, INC., and
Reliance Insurance Company,
Appellants.

No. WD 58380.

Missouri Court of Appeals,
Western District.

Jan. 23, 2001.

Timothy G. Lutz, Kansas City, Missouri, for appellants.

Aaron C. Johnson, Stacey R. Page, Kansas City, Missouri, for respondents.

Before BRECKENRIDGE, P.J., ULRICH and HOWARD, JJ.

BRECKENRIDGE, Judge

Del–Jen Construction, Inc., and its insurer, Reliance Insurance Company, appeal the Labor and Industrial Relations Commission's decision finding that Missouri has jurisdiction over Peter Whiteman's claim for workers' compensation benefits. On appeal, Del–Jen and Reliance claim that the Commission erred in allowing Mr. Whiteman to submit additional evidence in his application for review to the Commission following the hearing before the administrative law judge. Del–Jen and Reliance also claim that Mr. Whiteman failed to present sufficient evidence to establish that Missouri has jurisdiction over his claim under § 287.110.2, RSMo 1994.[1] This court finds that the Commission did not abuse its discretion in allowing Mr. Whiteman to present additional evidence. The additional evidence, combined with the other evidence presented, was sufficient to support the Commission's finding that Missouri has jurisdiction over Mr. Whiteman's workers' compensation claim. Therefore, the Commission's award is affirmed.

**Factual and Procedural Background**

In early March 1995, Del–Jen advertised a job opening for a journeyman carpenter in *The Kansas City Star.* On March 9, 1995, Mr. Whiteman went to Del–Jen's

---

1. All statutory references are to the Revised Statutes of Missouri 1994.

office in Fort Leavenworth, Kansas, where he completed an application for the position, and interviewed with William Britz, the site superintendent. During the interview, Mr. Britz told Mr. Whiteman that he needed proof of Mr. Whiteman's journeyman status.

Approximately a week later, Mr. Whiteman obtained information from his union that proved he was a journeyman carpenter. On March 17, 1995, Mr. Whiteman took the information to Del–Jen's office in Fort Leavenworth. At that time, a Del Jen employee told Mr. Whiteman that there were other people Del Jen wanted to interview for the job, so Del–Jen would be in touch with him.

On March 20, 1995, Mr. Britz called Mr. Whiteman and left a message on Mr. Whiteman's answering machine. Mr. Whiteman was living in his girlfriend's home in Kansas City, Missouri, at the time. When Mr. Whiteman returned Mr. Britz's call from his girlfriend's home, Mr. Britz told Mr. Whiteman that Del–Jen had decided to hire him, and Mr. Britz asked when he would be able to start. Mr. Whiteman's brother, Scott, who had been helping Mr. Whiteman install replacement windows in the home, was with Mr. Whiteman when he returned Mr. Britz's call. After Mr. Whiteman hung up the phone, he told Scott that Del–Jen had hired him, and that he had to get a physical examination. Scott remembered the incident because he thought that it was unusual for a person to be hired over the telephone.

The next day, Mr. Whiteman called Mr. Britz and told him that he could start on March 22, 1995. Mr. Whiteman did, in fact, begin working for Del–Jen on March 22nd. Mr. Whiteman eventually took a physical examination and drug test for Del–Jen on April 17, 1995.

On May 25, 1995, Mr. Whiteman was injured on the job when a scaffolding board on which he was standing collapsed, causing him to fall seven to ten feet. The accident occurred at Del–Jen's Fort Leavenworth job site. Mr. Whiteman subse-quently filed a claim for benefits with the Division of Workers' Compensation. In response, Del–Jen and Reliance admitted that Mr. Whiteman was involved in an accident and that he was one of Del–Jen's employees at the time of the accident. Del–Jen and Reliance denied, however, that the Missouri Division of Workers' Compensation had jurisdiction over Mr. Whiteman's claim. Del–Jen and Reliance asserted that the matter was strictly a Kansas workers' compensation claim.

On August 3, 1998, a hearing was held on Mr. Whiteman's claim before an administrative law judge. At the beginning of the hearing, the parties stipulated that Mr. Whiteman sustained an injury by accident arising out of and in the course of his employment with Del–Jen. The parties also agreed that the sole issue before the ALJ was whether Mr. Whiteman's employment contract with Del–Jen was entered into in the State of Missouri, thereby giving Missouri jurisdiction over Mr. Whiteman's claim under § 287.110.2. Section 287.110.2 provides, *inter alia,* that the workers' compensation law applies "to all injuries received and occupational diseases contracted in this state, regardless of where the contract of employment was made, and also to all injuries received and occupational diseases contracted outside of this state under contract of employment made in this state[.]"

Mr. Whiteman contended at the hearing that his contract of employment with Del–Jen was entered into in Missouri because he was at his girlfriend's home in Kansas City, Missouri, on March 20, 1995, when he returned Mr. Britz's phone call. Mr. Whiteman claimed that during that phone call, Mr. Britz offered him the job and he accepted. To support his contention, Mr. Whiteman offered his own testimony and that of his brother, Scott, who he claimed was present during his phone conversation with Mr. Britz.

Del–Jen and Reliance, on the other hand, contended that the offer and accep-

tance of Mr. Whiteman's employment contract occurred on March 17, 1995, when Mr. Whiteman came to Del–Jen's office in Fort Leavenworth for a purported second interview. In support of their argument, Del–Jen and Reliance offered the deposition testimony of Mr. Britz and Stanley Uhlig, Del–Jen's site manager at the Fort Leavenworth job site. Mr. Britz testified that his job duties for Del–Jen included hiring employees, and that he had hired Mr. Whiteman. According to Mr. Britz, he offered Mr. Whiteman the job during this second interview at Fort Leavenworth. Mr. Britz testified that after Mr. Whiteman accepted the offer, they scheduled a physical examination and drug test. Mr. Britz stated that he told Mr. Whiteman that if he passed both, Del–Jen would call him to set up a start date and, in fact, that is what occurred.

Several of Del–Jen's employment records for Mr. Whiteman contradicted Mr. Britz's testimony regarding the details of Mr. Whiteman's hiring, however. Del–Jen's personnel action form, dated March 20, 1995, indicated that Mr. Whiteman was hired on that date. Del–Jen's personnel/payroll notice form for Mr. Whiteman showed that his start date was March 22, 1995. Additionally, Mr. Whiteman's time sheet showed that he started working for Del–Jen during the week ending March 25, 1995.

Based upon the dates contained in these records, and the fact that Del–Jen's employment physical examination form for Mr. Whiteman was dated April 17, 1995, Mr. Uhlig, the site supervisor, testified in

his deposition that, contrary to Mr. Britz's testimony, it was a fair statement that Mr. Whiteman began working before he took his physical examination and drug test. As for the specific details of Mr. Whiteman's hiring, Mr. Uhlig testified that he let Mr. Britz handle the hiring of employees. Mr. Uhlig admitted that he did not remember anything about Mr. Whiteman's hiring, except that he looked at Mr. Whiteman's union card and determined that Del–Jen needed further proof of Mr. Whiteman's journeyman status before Mr. Whiteman could be hired. Mr. Uhlig admitted that he was not present during Mr. Britz's alleged second interview with Mr. Whiteman, and that, while he thought Mr. Britz offered Mr. Whiteman the job during the alleged second interview, he was not positive.

At the end of the hearing before the ALJ, Del–Jen and Reliance offered telephone records from Sprint for Mr. Whiteman's girlfriend's house. Mr. Whiteman had testified that his girlfriend's long-distance carrier was Sprint. The Sprint records indicated that, contrary to Mr. Whiteman's testimony, no long-distance calls were made from Mr. Whiteman's girlfriend's house to Leavenworth during the month of March 1995. Mr. Whiteman objected to the admission of the records on the basis that, in offering the records, Del–Jen and Reliance failed to comply with the requirements of the business records statute, § 490.692.[2] The ALJ reserved ruling on the admissibility of the Sprint records until after the parties filed post-trial briefs.

**2.** Section 490.692 provides, in pertinent part:
1. Any records or copies of records reproduced in the ordinary course of business by any photographic, photostatic, microfilm, micro-card, miniature photographic, optical disk imaging, or other process which accurately reproduces or forms a durable medium for so reproducing the original that would be admissible under sections 490 .660 to 490.690 shall be admissible as a business record, subject to other substantive or procedural objections, in any court in this state upon the affidavit of the

person who would otherwise provide the prerequisites of sections 490.660 to 490.690, that the records attached to the affidavit were kept as required by section 490.680.
2. No party shall be permitted to offer such business records into evidence pursuant to this section unless all other parties to the action have been served with copies of such records and such affidavit at least seven days prior to the day upon which trial of the cause commences.

On August 26, 1998, the ALJ entered his award denying Mr. Whiteman benefits on the basis that Missouri did not have jurisdiction over his workers' compensation claim. In his award, the ALJ found that the Sprint records tendered by Del–Jen and Reliance at the hearing were inadmissible because Del–Jen and Reliance failed to comply with the affidavit requirement for the admission of business records under § 490.692. Before reaching this conclusion, however, the ALJ referred in his findings of fact to Mr. Whiteman's testimony that Sprint was the long-distance carrier for Mr. Whiteman's girlfriend's house, and that Mr. Whiteman testified that he dialed directly the telephone call during which he claimed to have accepted Del Jen's employment offer:

> [Mr. Whiteman] stated that all calls he made to his employer in Leavenworth, Kansas, were made from his girlfriend's house. He admitted that the long distance carrier for his girlfriend's house in March 1995 was Sprint. He stated that his girlfriend worked for Sprint.

* * *

> [Mr. Whiteman] stated that he accepted the job from Del–Jen during a long distance telephone call he made to his employer. He indicated that Mr. Britz had called his, Claimant's, girlfriend's house and left a message on the answering machine and that he, Claimant, returned the call and accepted the job. Claimant further indicated that he dialed the number direct to his employer and that he did not call collect.

The ALJ also set out the content of the Sprint records in detail in his findings of fact:

> Exhibit 1 contained records from Sprint Telephone Company. Attached to the first page of the exhibit was a letter dated June 23, 1998, from Clois E. Fleming, the director of Security for Sprint, which certified that the records were complete and accurate and maintained by Sprint in the regular course of business.

The telephone records from Sprint pertained to all long distance telephone calls made from the home of Claimant's girlfriend in March 1995. The records showed that two long distance telephone calls were made from Claimant's girlfriend's home on March 20, 1995, and that both were made to Reno, Nevada. The records further showed that during the month of March 1995 long distance telephone calls from Claimant's girlfriend's house were made to Minnesota, New Mexico, Colorado, Texas, California, Washington, D.C., Missouri, Wichita, Kansas on March 13 and 14, and Pennsylvania. No long distance calls were made to Leavenworth, Kansas from Claimant's girlfriend's home during the month of March 1995.

The applicable Missouri statute pertaining to the admissibility of business records at RSMo § 490.692 provides that no such records shall be admitted into evidence unless they have been furnished to the opposing parties at least seven days prior to the trial and unless accompanied by an affidavit from the custodian of records certifying their authenticity and that they were maintained in the regular course of business.

Claimant's employer did not submit a sworn affidavit in conjunction with the alleged business records. There was nothing in the offer stating that the author of the letter was the custodian of the alleged business records. Therefore, it must be found that Claimant's employer has not shown that Exhibit 1 may be admitted into evidence as a business record. Thus, it was not considered in reaching the decision in this case.

In his conclusions of law, the ALJ concluded that Mr. Britz and Mr. Uhlig were credible witnesses, in contrast to Mr. Whiteman and his brother. Because it concluded that Mr. Whiteman failed to produce evidence that was more credible

than Mr. Britz's and Mr. Uhlig's testimony, the ALJ determined that Mr. Whiteman failed to meet his burden of proving that the employment contract was made in Missouri and, therefore, that Missouri has jurisdiction over his claim.

Mr. Whiteman filed an application for review with the Commission. While his application for review was pending, Mr. Whiteman filed a motion to submit additional evidence. The additional evidence Mr. Whiteman requested to submit consisted of, *inter alia*, an affidavit from Clois Fleming, the records custodian for Sprint. In the affidavit, Clois Fleming stated that, unless the caller dialed a specific five-digit access code, telephone calls from Mr. Whiteman's girlfriend's residence to Leavenworth would not have appeared on Sprint phone bills. Rather, the long-distance calls would have been handled by Southwestern Bell. Mr. Whiteman also asked that he be allowed to submit Southwestern Bell phone records for Del-Jen and Mr. Whiteman's girlfriend's residence. The records showed a phone call from Del-Jen's office in Kansas to Mr. Whiteman's girlfriend's residence in Missouri on March 20, 1995. Additionally, the records showed eleven phone calls from Mr. Whiteman's girlfriend's residence to Del-Jen's office during the month of March 1995, including one on March 20, 1995, approximately ten minutes after the call from Del-Jen's office to Mr. Whiteman's girlfriend's house.

The Commission initially denied Mr. Whiteman's request to submit this additional evidence. After hearing oral arguments on Mr. Whiteman's motion, however, the Commission reconsidered its decision and allowed Mr. Whiteman to submit Clois Fleming's affidavit and the Southwestern Bell phone records. The Commission also allowed Del-Jen and Reliance to submit rebuttal evidence related to Mr. Whiteman's additional evidence.

Subsequently, the Commission entered an award reversing the ALJ's denial of benefits to Mr. Whiteman. In its decision, the Commission discussed its reasons for allowing Mr. Whiteman to submit the additional evidence of the Clois Fleming's affidavit and the Southwestern Bell phone records. First, the Commission found that Mr. Whiteman was clearly surprised by Del-Jen and Reliance's attempted introduction of the Sprint records at the hearing before the ALJ. Second, the Commission stated that it granted Mr. Whiteman's request to submit the additional evidence of Clois Fleming's affidavit and the Southwestern Bell phone records because of the apparent influence the Sprint records had on the ALJ's decision, and specifically, the ALJ's credibility determination in favor of Del-Jen and Reliance's witnesses.

To support its conclusion that Missouri does, in fact, have jurisdiction over Mr. Whiteman's workers' compensation claim, the Commission found that, while the Southwestern Bell telephone records alone did not prove that Mr. Whiteman received Del-Jen's job offer by telephone, the records clearly corroborated the testimony of Mr. Whiteman and his brother. Moreover, the Commission stated that Del-Jen and Reliance failed to produce any documents disproving Mr. Whiteman's testimony. As for Del-Jen and Reliance's witnesses, the Commission found that "Mr. Uhlig had no independent recollection of when or how" Mr. Whiteman was hired, and Mr. Britz's testimony indicated that he remembered only the usual hiring procedure, and "had little recollection" of Mr. Whiteman's case. Furthermore, the Commission found that Mr. Britz's testimony regarding the details of Mr. Whiteman's hiring were contradicted by Del-Jen's own records.

The Commission recognized that, "[w]hile the ALJ personally observed the demeanor of [Mr. Whiteman] and his brother, the misleading Sprint records may have tainted the administrative law judge's credibility judgment, despite the ruling that the records were inadmissible." Thus, the Commission concluded that

"[e]liminating that influence places claimant's testimony in a whole new and more favorable light, particularly when claimant's testimony is corroborated by the Southwestern Bell telephone records ." After resolving the credibility issues in Mr. Whiteman's favor, the Commission found that Mr. Whiteman sustained his burden of proving that he accepted Del–Jen's job offer while he was in Missouri and, therefore, that Missouri has jurisdiction over Mr. Whiteman's workers' compensation claim. Del–Jen and Reliance filed this appeal.[3]

### Commission Did Not Err in Allowing Mr. Whiteman to Present Additional Evidence

In their first point, Del–Jen and Reliance argue that the Commission erred in allowing Mr. Whiteman to submit to the Commission the Southwestern Bell telephone records from March 1995 for Mr. Whiteman's girlfriend's residence and Del–Jen's office. Del–Jen and Reliance contend that the Southwestern Bell records were not "newly discovered evidence" under the Commission's regulation allowing for the submission of additional evidence to the Commission and, therefore, the Commission should not have allowed the records to be admitted into evidence.

■ The Commission's decision to hear additional evidence is discretionary, and this court will overturn the Commission's decision only if it finds that the Commission "acted arbitrarily or abused its discretion." *Gander v. Shelby County*, 933 S.W.2d 892, 895 (Mo.App.1996). 8 CSR 20–3.030(2)(A) provides that, while "any interested party may file a motion to submit additional evidence to the commission" after an application for review has been filed, "[t]he hearing of additional evidence by the commission shall not be granted

except upon the ground of newly discovered evidence which with reasonable diligence could not have been produced at the hearing before the administrative law judge."

■ The controversy in this case centers on whether the Commission abused its discretion in finding that, with reasonable diligence, Mr. Whiteman could not have produced the Southwestern Bell records at the hearing before the ALJ. Resolution of this issue requires this court to interpret the phrase "reasonable diligence." Unambiguous provisions in regulations must be given their plain meaning. *See Moore v. State Tax Com'n of Missouri*, 862 S.W.2d 407, 409 (Mo.App.1993). The plain and ordinary meaning of a word is generally found in the dictionary. *Spradlin v. City of Fulton*, 982 S.W.2d 255, 262 (Mo. banc 1998) (utilizing Black's Law Dictionary definitions). The dictionary defines "diligence" as "1. A continual effort to accomplish something. 2. Care; caution; the attention and care required from a person in a given situation." BLACK'S LAW DICTIONARY 468 (7th ed.1999). "Reasonable diligence" is defined as "[a] fair degree of diligence expected from someone of ordinary prudence under circumstances like those at issue." *Id.*

■ In his motion to submit additional evidence to the Commission, Mr. Whiteman explained the circumstances surrounding his failure to produce the Southwestern Bell telephone records in the hearing before the ALJ. Specifically, Mr. Whiteman was under the impression that the long-distance carrier for his girlfriend's residence was Sprint, which was his girlfriend's employer. In an affidavit, Mr. Whiteman averred that in June or July 1998, prior to the hearing before the ALJ, he attempted to obtain the March 1995 telephone records from Sprint. The

**3.** The Commission designated its award in this case as only temporary or partial. Generally, no appeal lies from a temporary or partial order. *Avery v. City of Columbia,* 966 S.W.2d 315, 320 (Mo.App.1998). Where the

question in the case involves a determination of liability, however, this court may review the award even though it was temporary or partial in nature. *Id.*

person he spoke to at Sprint informed him, however, that Sprint retained billing records for only two years. Thus, at the time of the hearing before the ALJ in August 3, 1998, Mr. Whiteman believed that the Sprint records for March 1995 were unavailable to both parties.

It was only after Del–Jen and Reliance offered the Sprint records at the hearing before the ALJ, without having afforded Mr. Whiteman the proper seven-day notice for the introduction of business records pursuant to § 490.692, that Mr. Whiteman was made aware not only of the fact that the Sprint records were available, but also that the records did not reflect his long-distance calls to Del–Jen. Mr. Whiteman then obtained an affidavit from Clois Fleming, the records custodian for Sprint, in which Clois Fleming stated that long-distance calls from Kansas City, Missouri, to Leavenworth made during March 1995 would not have been handled by Sprint unless the caller dialed a specific five-digit access code. Clois Fleming further averred that if the caller did not dial the five-digit access code, the long-distance calls from Mr. Whiteman's girlfriend's residence would have been handled by Southwestern Bell.

This evidence indicates that Mr. Whiteman's failure to produce the Southwestern Bell records at the hearing before the ALJ was caused by the incorrect information he received from Sprint when he attempted to obtain the Sprint records prior to the hearing before the ALJ, and not by Mr. Whiteman's failure to exercise the care and attention required from a person in his situation. Mr. Whiteman attempted to obtain phone records from Sprint, which he believed was his long-distance carrier, prior to the hearing before the ALJ. Such an attempt to corroborate his testimony regarding Del–Jen's job offer and his acceptance in the phone call from his girlfriend's house on March 20, 1995, constituted the attention and care expected from someone of ordinary prudence under the circumstances. Once he was told by Sprint that

the records for March 1995 were unavailable, however, his failure to pursue the matter further could also be expected from someone of ordinary prudence in that situation. Having not seen the Sprint records prior to the hearing before the ALJ because of the incorrect information he received from Sprint and because of Del–Jen and Reliance's failure to give the notice required by statute, Mr. Whiteman did not know he had the ability to produce any phone records until after the hearing before the ALJ. Thus, from the circumstances set forth by Mr. Whiteman, the Commission did not abuse its discretion in finding that with reasonable diligence, the records could not have been produced prior to the hearing before the ALJ.

Del–Jen and Reliance further argue that, contrary to the regulation's stated purpose for allowing additional evidence, the Commission's allowing Mr. Whiteman to submit the Southwestern Bell phone records did not further the interests of justice. 8 CSR 20–3.030(2)(B) provides that, "[a]s a matter of policy, the commission is opposed to the submission of additional evidence except where it furthers the interests of justice." On this issue, the Commission found that Mr. Whiteman "clearly was surprised by the attempted introduction of [the Sprint] records," and the Commission noted that the ALJ referenced the Sprint records in the award. The Commission then stated that it granted Mr. Whiteman's request to submit the additional evidence and Del–Jen's rebuttal evidence "[d]ue to the apparent influence of these records on the administrative law judge's decision," and specifically, on the ALJ's credibility determinations.

■ The interpretation of a court order is a question of law which this court reviews *de novo*. *Jacobs v. Georgiou*, 922 S.W.2d 765, 769 (Mo.App.1996). Although the order in this case is an ALJ's award, it is reasonable to apply the same standard, as it is a quasi-judicial order. Looking at the ALJ's award, this court notes that, despite the fact that the ALJ stated

he did not consider the records in reaching his decision, the ALJ set out the content of the Sprint records in great detail in his findings of fact, reciting all of the places to which the records indicated long-distance calls were made from Mr. Whiteman's girlfriend's residence. Moreover, the ALJ concluded his discussion of the content of the records by stating that "[n]o long distance calls were made to Leavenworth, Kansas, from Claimant's girlfriend's home during the month of March 1995." In light of this conclusion and the ALJ's detailed discussion of the content of the records, this court finds that the Commission correctly decided that the ALJ was apparently influenced by the Sprint records in making his award. Deferring to the Commission's factual finding that Mr. Whiteman "was clearly surprised by the attempted introduction of [the Sprint] records," allowing Mr. Whiteman to present the Southwestern Bell records to rebut the Sprint records furthered the interests of justice. Del–Jen and Reliance's first point is denied.

### Sufficient Evidence Supports the Commission's Finding that Missouri has Jurisdiction

In their second point, Del–Jen and Reliance claim that the evidence is insufficient to support the Commission's finding that Mr. Whiteman's contract of employment was entered into in Missouri and, therefore, Missouri has jurisdiction over Mr. Whiteman's workers' compensation claim. Del–Jen and Reliance claim that the only connection Mr. Whiteman's claim has with the State of Missouri is one phone call. Moreover, they assert that the evidence regarding the content of that phone call is inconsistent, contradictory and not credible.

Courts deem a contract to have been made where the parties to the contract perform the last act necessary to complete the contract. *Gash v. Black and Veatch,* 976 S.W.2d 31, 32 (Mo.App.1998). The last act necessary for the formation of the employment contract in this case was Mr. Whiteman's acceptance of Del–Jen's offer of employment.[4] Where an applicant accepts an offer of employment over the telephone while the applicant is in Missouri, the employment contract is deemed to have been made in Missouri. *Id.* 32–33.

Here, the Commission concluded that the evidence supported a finding that Mr. Whiteman accepted Del–Jen's job offer over the telephone while Mr. Whiteman was at his girlfriend's residence in Kansas City, Missouri. In doing so, the Commission reversed the decision of the ALJ. When reviewing a case in which the Commission has reversed the findings and award entered by the ALJ, this court engages in a two-step analysis. *Davis,* 903 S.W.2d at 570. In the first step, this court "examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the award is supported by competent and substantial evidence." *Id.* In this first step, this court "may disregard the credibility determinations of the ALJ because it is viewing the evidence in the light most favorable to the award." *Id.*

The evidence supporting the Commission's award was the testimony of Mr. Whiteman and his brother, corroborated by the Southwestern Bell phone records and Del–Jen's personnel records for Mr.

---

4. Although Del–Jen required Mr. Whiteman to take a drug test and physical examination, the evidence indicates that Mr. Whiteman was hired and actually began working for Del–Jen before he took the drug test and physical examination. Thus, this case is distinguishable from *Whitney v. Country Wide Truck Service, Inc.,* 886 S.W.2d 154, 155–56 (Mo.App. 1994), where the applicant was not allowed to begin working for the employer until after she completed a drug test, road test, and orientation. The court in *Whitney* found that those tests, and not the applicant's prior acceptance of the offer of employment, were the last acts necessary to complete the employment contract. *Id.*

Whiteman. Mr. Whiteman testified that on March 17, 1995, he had gone to Del–Jen's office in Fort Leavenworth only to give Del–Jen proof of his journeyman status, and not to have a "second interview" as Del–Jen alleged. Mr. Whiteman said that at that time, a Del–Jen employee told him they needed to interview other applicants, and would contact him. Three days later, on March 20, 1995, Mr. Whiteman was at his girlfriend's residence in Kansas City, Missouri, when Del–Jen left him a message on the answering machine. Mr. Whiteman returned the call, and during that conversation, Del–Jen offered him the job and he accepted it. Mr. Whiteman's brother, Scott, who was at the residence that day during Mr. Whiteman's phone conversation with Del–Jen, remembered his brother telling him that Del–Jen had just hired him. Scott remembered the event because he thought it was unusual that a company would hire someone over the phone. Mr. Whiteman testified that the day after he was hired, he called Del–Jen to discuss his availability, and he began working for Del–Jen the next day.

The Southwestern Bell phone records corroborated Mr. Whiteman's testimony regarding the phone calls on March 20 and 21, 1995. The records show a call from Del–Jen's office in Leavenworth to Mr. Whiteman's girlfriend's residence on March 20th, and a call from Mr. Whiteman's girlfriend's residence to Del–Jen's office approximately ten minutes later. The records also show a call from Mr. Whiteman's girlfriend's residence to Del–Jen's office the next day, just as Mr. Whiteman testified.

Additionally, Del–Jen's own personnel records for Mr. Whiteman corroborate his testimony. Del–Jen's personnel action form indicated that Mr. Whiteman was hired on March 20, 1995, and Del–Jen's personnel/payroll notice form for Mr. Whiteman showed that his start date was March 22, 1995, just as Mr. Whiteman testified. Mr. Whiteman's time sheet showed that he started working for Del–Jen in the week ending March 25, 1995.

These same records contradict the testimony of one of Del–Jen's witnesses, Mr. Britz. Mr. Britz testified that he hired Mr. Whiteman on March 17, 1995, and Mr. Whiteman did not begin working for Del–Jen until after Del–Jen received the results of Mr. Whiteman's physical examination and drug test. Del–Jen's physical examination form for Mr. Whiteman was dated April 17, 1995, however, which was approximately three weeks after Del–Jen's personnel records indicated that Mr. Whiteman began working for Del–Jen.

Del–Jen's other witness, Mr. Uhlig, testified that he let Mr. Britz handle the hiring of employees, and he admitted that he did not remember anything about Mr. Whiteman's hiring except that he looked at Mr. Whiteman's union card at some point. Mr. Uhlig also admitted that he was not present during Mr. Whiteman's purported second interview, and was not positive that Mr. Britz hired Mr. Whiteman at that time.

Based upon Mr. Uhlig's testimony that he did not remember the specific details of Mr. Whiteman's hiring, and Mr. Britz's testimony that is in conflict with Del–Jen's personnel records, the Commission specifically found that Del–Jen's contention that Mr. Whiteman was hired in Kansas was not reliable. *Davis,* 903 S.W.2d at 570. In this first step of the *Davis* analysis, this court defers to the Commission's credibility findings. Thus, viewing the evidence and inferences in the light most favorable to the Commission's award, and disregarding all contrary evidence and inferences, this court finds that there was sufficient evidence to support the Commission's finding that the contract of employment was made in Missouri and, therefore, Missouri has jurisdiction over Mr. Whiteman's workers' compensation claim.

In the second step of the *Davis* analysis, this court reviews the entire record, including evidence unfavorable to the

award, to determine whether the Commission's award is against the overwhelming weight of the evidence. *Id.* It is in this second step that the ALJ's credibility determinations that are contrary to the Commission's credibility determinations are considered:

Because the ALJ's findings and credibility determinations are part of the record as a whole, when the Commission's determinations as to the credibility of witnesses who gave live testimony before the ALJ are different from those made by the ALJ, the ALJ's contrary findings must be given due consideration, bearing in mind that evidence supporting a conclusion may be less substantial when an impartial, experienced ALJ who has observed the witnesses and lived with the case has drawn conclusions different from the Commission's.

*Id.* at 570–71.

The evidence contrary to the Commission's award included the testimony of Mr. Uhlig and Mr. Britz that Mr. Whiteman accepted Del–Jen's offer at a second interview in Fort Leavenworth on March 17, 1995. The ALJ found Mr. Uhlig and Mr. Britz to be credible witnesses. Both Mr. Uhlig and Mr. Britz testified by deposition, however. Where witnesses testify only by deposition and do not appear live before the ALJ, the Commission is able to determine the credibility of those witnesses " 'from the written record equally well as' the ALJ." *Id.* at 573 (quoting *Frazier v. National Bearing Division, American Brake Shoe Co.,* 250 S.W.2d 1008, 1011 (Mo.1952)). Thus, this court gives no deference to the ALJ's credibility determinations regarding Mr. Uhlig and Mr. Britz, and instead defers to the Commission's determination that their testimony regarding Mr. Whiteman's hiring was not reliable. *Davis,* 903 S.W.2d at 573.

The other evidence contrary to the award was Mr. Whiteman's brother's testimony that the March 20, 1995, phone call in which Mr. Whiteman was offered and accepted the job occurred in the morning,

and Mr. Whiteman's testimony that the call lasted twenty minutes. The Southwestern Bell telephone records indicate that the call on March 20th from Mr. Whiteman's girlfriend's residence to Del–Jen was not placed in the morning, but rather occurred at 5:12 P.M., and lasted only five minutes. Additionally, on the issue of Mr. Whiteman's credibility, the ALJ found that Mr. Whiteman "appeared to be uncertain in his testimony and gave long pauses prior to answering any questions on cross-examination." As for Mr. Whiteman's brother's credibility, the ALJ found that Scott had admitted that he could not hear what Del–Jen was saying to Mr. Whiteman during the March 20th phone conversation, and that Scott had admitted that he had spent about thirty minutes discussing his testimony with Mr. Whiteman's attorney.

Where the Commission's credibility determinations regarding live witnesses differ from those of the ALJ, it is "a great aid to the reviewing court if the Commission articulates the reasons why it differed in its credibility determinations." *Id.* at 571. Here, the Commission stated that it believed "the misleading Sprint records may have tainted the administrative law judge's credibility judgment" regarding Mr. Whiteman and his brother. The Commission found that "[e]liminating that influence places [Mr. Whiteman's] testimony in a whole new and more favorable light, particularly when [Mr. Whiteman's] testimony is corroborated by the Southwestern Bell telephone records."

The Commission's stated reasons for disagreeing with the ALJ's credibility determinations indicate that the Commission "did not callously ignore, capriciously reject, or arbitrarily disregard [the ALJ's] findings on the issue of the credibility of the witnesses who testified before [the ALJ], but duly considered them in reaching its contrary result." *Id.* at 574. In reviewing the entire record, this court has considered both the ALJ's findings and the Commission's findings and reasons for dis-

agreeing with the ALJ. *Id.* Based upon the whole record, this court finds that the Commission's determination that Mr. Whiteman's employment contract was entered into in Missouri and, therefore, that Missouri has jurisdiction over Mr. Whiteman's workers' compensation claim is not against the overwhelming weight of the evidence. Mr. Whiteman's second point is denied.

The award of the Commission is affirmed.[5]

All concur.

---

**5.** In his brief, Mr. Whiteman asks this court to award him damages for a frivolous appeal. His request is denied.