**Joseph ZIMMERMAN, Appellant,**

v.

**CITY OF RICHMOND HEIGHTS and St. Louis Area Insurance Trust, Respondent.**

**No. ED 87319.**

Missouri Court of Appeals, Eastern District, Division Two.

June 30, 2006.

Richard A. Barry III, St. Louis, MO, for appellant.

Julie B. Hovermale, St. Louis, MO, for respondent.

GEORGE W. DRAPER III, Judge.

Joseph Zimmerman (hereinafter, "Employee") appeals from the decision of the Labor and Industrial Relations Commission (hereinafter, "the Commission") denying him permanent partial disability benefits based upon a work-related injury.

Employee's sole point on appeal argues there was substantial and competent evidence in the record to support such an award. We reverse and remand.

Section 287.495.1 RSMo (2000)[1] which governs appeals from awards of the Commission, sets out our standard of review:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) [t]hat the [C]ommission acted without or in excess of its powers; (2) [t]hat the award was procured by fraud; (3) [t]hat the facts found by the [C]ommission do not support the award; (4) [t]hat there was not sufficient competent evidence in the record to warrant the making of the award.

The Commission's findings of fact are conclusive and binding. *Id.* On issues concerning credibility and the weight to be given conflicting evidence, we defer to the Commission's judgment. *Bennett v. Columbia Health Care,* 134 S.W.3d 84, 92 (Mo.App. W.D.2004). We "must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003). We determine whether the award is supported by competent and substantial evidence "by examining the evidence in the context of the whole record." *Id.* at 223.

The facts are relatively undisputed. Employee is currently a detective with the City of Richmond Heights Police Department (hereinafter, "Employer"). On November 13, 2001, Employee was working

---

1. All further statutory references are to RSMo (2000) unless otherwise indicated.

the overnight shift as a patrol officer. He had been working the overnight shift for approximately ten consecutive days. Employee left after completing his shift at 7:00 a.m. on November 14, 2001. After returning home, Employee slept briefly because he had been subpoenaed to appear in St. Louis County Circuit Court that afternoon to testify in a criminal case. Employee showered, dressed, and ate lunch before driving back to the police station where he met another officer who was also scheduled to testify that afternoon.

Employee and the other officer arrived at the circuit court, checked in, and discovered court was in recess. The officers took seats on a bench outside of the courtroom and waited for court to resume. The next thing Employee remembers is awakening in the St. Mary's Hospital emergency room. Employee was told he suffered a seizure. Employee stayed at the emergency room for the remainder of the afternoon while tests were conducted. He was released that evening.

Employee's primary care physician referred him to a neurologist, Dr. William Logan (hereinafter, "Dr. Logan"). Employee saw Dr. Logan on November 16, 2001. Dr. Logan scheduled an EEG and an MRI to determine a course of treatment. The tests came back negative and no medication or treatment was prescribed. Dr. Logan diagnosed Employee as having a single tonoclonic seizure caused in part by sleep deprivation.

Following his seizure, Employee was placed on restricted work duty because he was unable to drive for six months. Employer did not have any restricted work duties that did not require driving, so Employee did not work from November 14, 2001 through May 2002. In May 2002, Employee returned to full duty with no work restrictions.

After returning to work, Employee filed for workers compensation benefits, two independent medical evaluations were conducted. Dr. Barry Feinberg (hereinafter, "Dr. Feinberg") evaluated Employee and testified on his behalf. Dr. Feinberg's expertise is in pain management and anesthesiology. Dr. Feinberg examined Employee, took his medical history, and reviewed all of the pertinent medical records and test results before issuing his report. Dr. Feinberg diagnosed Employee with a single seizure and did not see the need for additional medical treatment or work restrictions. Dr. Feinberg testified through deposition that sleep deprivation was the substantial factor in Employee suffering a seizure on November 14, 2001. Further, Dr. Feinberg opined Employee suffered an eight percent permanent partial disability to his body as a whole as a result of the seizure.

Dr. Raymond Cohen (hereinafter, "Dr. Cohen"), a board certified neurologist, examined Employee and testified on behalf of Employer. Similarly, Dr. Cohen received a medical history from Employee, conducted an examination, and reviewed the medical records. Dr. Cohen agreed with Dr. Feinberg's diagnosis and did not see the need for additional medical treatment or work restrictions. However, Dr. Cohen disagreed with Dr. Feinberg with respect to causation. Dr. Cohen acknowledged that the seizure took place while Employee was at work and was brought on partially by his lack of sleep, which was also causally related to his work, but he opined Employee may be predisposed to suffering seizures under certain circumstances. Dr. Cohen considered the sleep deprivation a "triggering" or "precipitating" factor to the seizure, but not enough to be the substantial factor. Dr. Cohen opined Employee suffered a two percent

permanent partial disability as a result of the seizure.

The administrative law judge (hereinafter, "the ALJ") determined Employee suffered a compensable injury in that his work as a police officer was a substantial factor in his having a single seizure. The ALJ recognized the discrepancy between Dr. Feinberg's and Dr. Cohen's testimony regarding causation, but found Dr. Cohen's "testimony is clear that had it not been for [Employee's] sleep deprivation, which was caused by his work, he could not have had the seizure." Further, the ALJ harmonized the doctors' conflicting testimony by finding "the two doctors actually do not disagree that [Employee's] seizure was caused by sleep deprivation."

On the issue of permanent partial disability, the ALJ denied compensation, finding Employee did not meet his burden of proof. The ALJ focused on Employee's testimony about his concerns of getting employment in the future and that he was not receiving any medication or treatment. The ALJ concluded, "There is no evidence that [Employee] has sustained any permanent partial disability whatsoever as a result of his seizure."

The Commission affirmed the ALJ's decision and offered a supplemental opinion to explain in detail the basis for its decision. With respect to the issue of permanent partial disability, the Commission also focused on Employee's lack of medication or treatment and that Employee was able to return to full-time employment with no restrictions. The Commission then addressed Dr. Cohen's testimony. The Commission stated, "Dr. Cohen, a board-certified neurologist, and the medical expert the Commission finds persuasive as to the issue or permanent disability, opined that [Employee's] minor residual permanent partial disability of 2% to the body as a whole, was not attributable to the injury."

Employee appeals this decision with respect to the Commission's decision denying permanent partial disability only.

In his sole point on appeal, Employee claims the Commission erred in denying him permanent partial disability benefits because there was substantial and competent evidence in the record to support such an award. Specifically, Employee argues medical experts for both Employer and Employee testified he suffered some degree of permanent partial disability as a result of the seizure. The parties do not dispute the Commission's decision that Employee suffered a work-related injury.

When seeking disability benefits with respect to a work-related injury, the claimant has the burden of proof to show that a disability resulted and the extent of such disability. *Moriarty v. Treasurer of State of Missouri*, 141 S.W.3d 69, 73 (Mo. App. E.D.2004). Claimant must prove the nature and extent of any disability by a reasonable degree of certainty. *Elrod v. Treasurer of Missouri as Custodian of Second Injury Fund*, 138 S.W.3d 714, 717 (Mo. banc 2004).

We recognize "the determination of a specific amount or percentage of disability awarded to a claimant is a finding of fact within the province of the Commission, and this Court will not substitute its judgment for that of the Commission even if this Court would have made a different initial conclusion." *Bowers v. Hiland Dairy Co.*, 132 S.W.3d 260, 271 (Mo.App. S.D.2004). Here, the Commission made it clear it found the testimony of Dr. Cohen "more persuasive" with respect to the issue of permanent partial disability. The Commission found Dr. Cohen testified Employee suffered two percent permanent partial disability, but "that it was not attributable to the injury."

This finding is contradicted directly by Dr. Cohen's deposition testimony. Employee's counsel asked Dr. Cohen the following question:

Q. Doctor do you have an opinion based upon a reasonable degree of medical certainty as to what—as to if you would give a rating with regards to any permanency this gentleman has suffered as a result of this seizure he experienced on 11/14/01?

A. He would be approximately a whole person disability of two percent.

Similarly, Dr. Feinberg testified Employee suffered a permanent partial disability as a result of the seizure, but placed the percentage at eight percent. Given the seizure documentation in Employee's medical history, Employee and Dr. Feinberg both expressed their concerns respecting Employee's future employability. Furthermore, although Employee testified he did not have any work restrictions, was not on any medication, and was not under any treatment regiment, this is not fatal to Employee's claim. "An employee may sustain a permanent partial disability and still be able to work." *Wiele v. National Super Markets, Inc.*, 948 S.W.2d 142, 148 (Mo.App. E.D.1997)(*overruled on other grounds, Hampton, supra*).

As a result, the only medical evidence before the Commission established Employee was disabled because of the seizure he suffered while working for Employer on November 14, 2001. This evidence was sufficient to meet Claimant's burden of proof making him eligible for disability compensation. The award denying compensation for permanent partial disability is not supported by competent and substantial evidence on the whole record and is clearly contrary to the overwhelming weight of the evidence. The Commission's award is reversed, and the cause is remanded with directions to the Commission to enter a new award finding Employee is permanently partially disabled and determine the percentage of disability based upon the testimony presented.

The Commission's decision is reversed and remanded.

GARY M. GAERTNER, SR., P.J., and KENNETH M. ROMINES, J., concur.