Arthur **LIBERTY**, Appellant,

v.

**TREASURER FOR the STATE OF MISSOURI—CUSTODIAN OF the SECOND INJURY FUND, Respondent.**

**No. WD 66889.**

Missouri Court of Appeals, Western District.

March 20, 2007.

Frank Douglas Eppright, Kansas City, for Appellant.

Maureen T. Shine, Asst. Atty. Gen., Kansas City, for Respondent.

Before JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and JOHN MORAN, JJ.

JAMES M. SMART, JR., Judge.

Arthur Liberty appeals the denial of his workers' compensation claim in which he sought benefits for permanent total disability from Missouri's Second Injury Fund. To the extent that the Commission purported to address the merits of the issue of Second Injury Fund liability, we vacate the Commission ruling. To the extent that the Commission determined that it lacked jurisdiction of the claim against the Second Injury Fund, we affirm.

**Factual and Procedural Background**

Arthur Liberty worked at Owens Corning, in Kansas City, Kansas, in various capacities doing heavy manual labor for over thirty years. While working at Owens, he suffered three separate injuries to his back in 1978, 1987, and 1993. His last day of work with Owens was on August 22, 1999. This was one day before he underwent back surgery. Mr. Liberty has been unable to work since the surgery.

Mr. Liberty filed a workers' compensation claim in April 2001, claiming that he had a permanent total disability as a result of "a series" of work-related injuries to his back. Mr. Liberty also alleged that he was entitled to benefits from Missouri's Second Injury Fund due to previous disability. Mr. Liberty and Owens agreed to a settlement on his claim in September 2004, which was approved by a Missouri administrative law judge (ALJ). The parties to that agreement stipulated that they were operating under Missouri's workers' compensation law based upon a Missouri contract of employment. The Second Injury Fund contested the claim and was not a party to the settlement between Owens and Mr. Liberty.

A hearing on Mr. Liberty's claim against the Fund was held before an ALJ on June 13, 2005. Mr. Liberty testified at the hearing and presented his medical records. He also presented deposition testimony and a report from Dr. Brent Koprivica and a deposition and report from vocational expert Mary Titterington. Among the evi-

dence presented by the Fund was the deposition of Mr. Liberty and the deposition testimony and report of Dr. Truett Swaim.

The ALJ ruled that Missouri did not have jurisdiction over the claim because Mr. Liberty did not meet his burden of proving a Missouri contract of employment. The ALJ also found that even if there were jurisdiction, the claim would be denied, because Mr. Liberty did not have a previous disability rising to the level of being a substantial hindrance or obstacle to his employment, as required by the applicable statute. The Commission unanimously affirmed and adopted the award.

Mr. Liberty appeals.

## Standard of Review

This court reviews the Commission's award to determine whether it is "supported by competent and substantial evidence upon the whole record." Mo. CONST. art. V, sec. 18. We must affirm unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or there is insufficient evidence in the record to warrant the making of the award. Section 287.495.1.[1] In the absence of fraud, the Commission's findings of fact are conclusive and binding on appeal. *Id.*

■■■ We review the award objectively, *without* viewing the evidence and its inferences in the light most favorable to the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). To determine whether there is sufficient competent and substantial evidence to support the award, we examine the evidence in the context of the whole record. *Id.* at 223. "An award that is contrary to the overwhelming weight of the evidence

is, in context, not supported by competent and substantial evidence." *Id.*

## Lack of Jurisdiction

Mr. Liberty first contends that the Commission's finding that it lacked jurisdiction over the claim was against the weight of the evidence, in that all the evidence established that the contract for hire was completed in Missouri. If the Commission lacked jurisdiction, then that portion of the ruling addressing the merits of the claim against the Second Injury Fund constitutes a nullity and is mere surplusage.

■■■ Section 287.110.2 provides that the Workers' Compensation Act:

shall apply to all injuries received and occupational diseases contracted in this state, ... and also to all injuries received and occupational diseases *contracted outside of this state under contract of employment made in this state[.]* (Emphasis added.)

Because Mr. Liberty's place of employment was in Kansas City, Kansas, and all his alleged injuries occurred there, he can claim Missouri jurisdiction only if his contract of employment was made in Missouri. Under Missouri law, a contract is deemed to have been made where the parties perform the last act necessary to complete the contract. *Gash v. Black & Veatch*, 976 S.W.2d 31, 32 (Mo.App.1998). Where the applicant accepts an employment offer over the telephone while he is in Missouri, the employment contract is deemed to have been made in Missouri. *Id.* at 32–33; *Whiteman v. Del–Jen Constr., Inc.*, 37 S.W.3d 823, 831 (Mo.App.2001).

■■■ Mr. Liberty claims that while he was staying with his brothers in Missouri, he received two telephone calls from Ow-

---

1. All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise noted.

ens, one in January 1968 and one in December 1968, each offering him a job. He says these calls were the last acts necessary to complete the contracts and that jurisdiction is, therefore, in Missouri. The claimant bears the burden of proving all essential elements of his claim, including jurisdiction. *Redden v. Dan Redden Co.,* 859 S.W.2d 207, 210 (Mo.App.1993). The determination of jurisdiction presents a factual issue, with the claimant having the burden of proof and persuasion on the question. *Id.* at 209.

Mr. Liberty initially testified on direct examination that he first started working for Owens in December 1968. On cross-examination, he acknowledged that he actually first started working there in January 1968. He completed his first and only job application in January 1968 at Owens' Kansas City, Kansas, plant. He also participated in a group interview with fifteen to twenty other prospective employees at the Kansas plant. Mr. Liberty testified that in January, Owens called him at his brother's house in Kansas City, Missouri, where he was living at the time. Owens informed him that he was hired. His hiring was dependent upon him getting a chest x-ray, however. He underwent a chest x-ray in Kansas City, Kansas, before starting work.

In April 1968, Mr. Liberty testified, he simply stopped going in to work at Owens and went back to Nebraska to help his father. He did not resign, nor was he formally terminated. At some point, he returned to Missouri, and in December 1968, he went back to work at Owens. He testified that this time, he had a one-on-one interview at the plant in Kansas with Mr. McCarn. He said that Mr. McCarn later called him at another brother's house

in Kansas City, Missouri, where he was then living, and offered him a job.

Mr. Liberty testified that he had eight brothers with all of whom he had resided at some point. He did not state where all of the brothers lived. All of his brothers had worked for Owens in Kansas at some time or other over the years. He did state that when he received the telephone calls, he was residing with brothers who lived in Missouri. With regard to where he was living when he received the call in December, Mr. Liberty did not remember the exact address, but he did recall the street name. He did not remember the telephone number at which he received the call. His testimony was somewhat inconsistent regarding where he was staying when he was hired in January. He produced no corroboration supporting his testimony as to when or where he was offered the job either in January or December.

■ The Commission affirmed and adopted the ALJ's finding that Missouri did not have jurisdiction over the claim because Mr. Liberty did not meet his burden of proving a Missouri contract of employment. This court reviews the ALJ's findings as adopted by the Commission. *Reidelberger v. Hussman Refrigerator Co.,* 135 S.W.3d 431, 433 n. 2 (Mo.App.2004).

■ The Commission first observed that Mr. Liberty did not provide any corroborative evidence supporting the proposition that the December telephone call that allegedly took place forty years ago actually occurred. He also provided no corroboration that the call was received in Missouri. The Commission found it surprising that Mr. Liberty claimed to remember which brother he was staying with at the time of that call, given that he had lived with all his brothers at various times.[2] The Commission also pointed out

---

**2.** The Commission erroneously said that Mr. Liberty had "nine" brothers. The Commis-

that Mr. Liberty could not remember his brothers' addresses or telephone numbers.

The Commission also noted that Mr. Liberty never officially resigned and was never officially terminated following his original employment with Owens in January 1968. His departure from Owens seemed somewhat like a leave of absence, so it is not entirely clear whether the December hiring was actually a new hiring. The Commission listed the circumstances surrounding the January hiring which point to Kansas jurisdiction: he was hired as the result of a group interview that took place in Kansas, the application was filled out in Kansas, the pre-employment chest x-ray (the last act in the hiring process) was done in Kansas, and he never repeated another x-ray for Owens in the hiring process. Furthermore, the plant where he worked was in Kansas, and his alleged injuries occurred in Kansas.

The Commission concluded:

With doubts regarding Mr. Liberty's employment status with [Owens] while he worked the summer of 1968 in Nebraska and doubts about which of his several brothers he roomed with at the time of the [Owens] call in December of 1968, the gossamer thread of a phone call from almost forty years ago is unconvincing in tethering Mr. Liberty's claim for compensation from the Second Injury Fund.

Even if the Commission were in error to doubt that the December hiring was a new

hiring, and if it should, therefore, have viewed the December hiring as a separate employment relationship, there was still evidence from which the Commission could reasonably have found a failure to establish jurisdiction. The testimony as to the phone call was "gossamer" thin, as the ALJ noted, due to the lack of corroboration. In the *Whiteman* case, where the claimant presented other evidence to corroborate his own testimony—including testimony from his brother, telephone records, and personnel records—the telephone call at issue was made just three years prior to the hearing. 37 S.W.3d at 831–32. The Commission concluded that "Mr. Liberty's testimony [was] unconvincing and overall ... he was not a credible witness. Therefore, something more than just his testimony is needed to establish Missouri jurisdiction."

Mr. Liberty says the Commission's ruling was against the weight of the evidence because there was no evidence presented to contradict his evidence of Missouri jurisdiction. Citing *Zimmerman v. Richmond Heights*, 194 S.W.3d 875, 879 (Mo. App.2006),[3] he says that where the only evidence before the Commission establishes Missouri jurisdiction, an award denying jurisdiction is not supported by competent and substantial evidence and is contrary to the overwhelming weight of the evidence. Mr. Liberty contends that his testimony that he received the December telephone call while in Missouri was uncontradicted and that there was no con-

---

sion also mistakenly stated, regarding the December call, that Mr. Liberty got confused on cross-examination as to where that brother lived and gave a different general location at trial than he did in his deposition. In reality, Mr. Liberty's testimony regarding the December call was basically consistent. The confusion and inconsistencies were when he was discussing the January call. These minor errors do not affect our opinion that the Commission's overall findings are correct.

3. *Zimmerman* was not about a claimant's uncontradicted testimony as to jurisdiction, but, instead, concerned the uncontradicted testimony of two medical experts. *Id.* at 878–79. There, two doctors disagreed on the extent of the claimant's disability, but both agreed as to the existence of a disability. *Id.* The court remanded because even though both experts found disability, the ALJ found none. *Id.*

flict in that testimony. He also says that all the addresses he identified were in Missouri, and no evidence was presented that he was living anywhere other than Missouri at the time of either call. With regard to which contract was the relevant employment contract, Mr. Liberty says the Fund presented no evidence to show that Owens considered him an employee between April and December 1968.

██ Mr. Liberty had both the burden of production and of persuasion. Unlike the claimant in *Whiteman*, Mr. Liberty presented no telephone records, no personnel records, and no other testimony. The alleged call occurred almost forty years prior to the hearing date. Mr. Liberty concedes that the January 1968 pre-employment x-ray was performed in Kansas. It is possible that, if the applicable employment date was December 1968, and if Liberty's testimony had been found credible, such evidence would have supported a finding of jurisdiction. We need not address that issue. Here, the Commission was not compelled to believe Liberty's testimony. The Commission is free to reject all or part of a claimant's testimony which it does not consider credible, *Gordon v. Tri–State Motor Transit Co.,* 908 S.W.2d 849, 854 (Mo.App.1995), and may disregard a witness's testimony even if no contradictory or impeaching evidence is introduced. *Conley v. Treasurer of Mo.,* 999 S.W.2d 269, 271 (Mo.App.1999).

██ As stated in *Zimmerman,* we defer to the Commission's judgment on issues concerning credibility and the weight given to conflicting evidence. 194 S.W.3d at 876. Here, the Commission adopted the ALJ's determination that Mr. Liberty was not a credible witness. The ALJ, who had the witness before him, was in the best position to make that determination. When the Commission adopts the ALJ's findings, especially as to credibility,

the resulting consistency is strong support for this court to affirm the Commission's award. *Davis v. Research Med.,* 903 S.W.2d 557, 571 (Mo.App.1995), *overruled on other grounds by Hampton,* 121 S.W.3d at 227. Mr. Liberty's testimony was his only evidence of jurisdiction, and the Commission specifically found that his testimony was not credible. There is no cogent reason to doubt the propriety of that credibility finding.

██ We also do not agree with Mr. Liberty's suggestion that Owens' stipulation in the settlement of the separate claim against the employer as to Missouri jurisdiction carries considerable weight in deciding the matter. Because the Fund was not a party to that settlement, it is not bound by those stipulations. *See Totten v. Treasurer of Mo.,* 116 S.W.3d 624, 628 (Mo.App.2003) (admission of settlement agreement as evidence does not bind the Fund to the terms of the agreement to which it was not a party). Liberty argues, however, that it can and should be considered as evidence. *See Conley,* 999 S.W.2d. at 275 (holding that a settlement agreement may be admitted in a workers' compensation hearing when there is a "clear and cogent reason" to do so). We agree that the agreement may be admissible as evidence; we do not agree, in light of the circumstances under which it was made, that it is persuasive evidence. We are aware of no particular reason Owens would have had to contest jurisdiction in Missouri. Because a Missouri ALJ cannot consider a settlement under section 287.610 unless Missouri has jurisdiction, the parties must recite their stipulation of jurisdiction before the ALJ can approve the agreement. At the time of approving the settlement between Owens and Liberty, there was no reason for the ALJ or Owens to challenge that specific term of the stipulation.

The Fund states in its brief, without reference to a specific statute, that the Fund "retains all the defenses the employer would otherwise have at a hearing, including jurisdiction." The judge stated at the outset of the hearing, with no objections, that jurisdiction was a disputed issue to be decided at the hearing, and considerable evidence was presented concerning that issue. Mr. Liberty argues in a supplemental memorandum to this court, however, that the Fund is not entitled to the defense of jurisdiction. He notes that section 287.220.5, which says the Fund "shall have the same defenses to such claims as would the uninsured employer," applies only to cases of an uninsured employer. Because Owens was fully insured, Mr. Liberty argues, this provision does not apply.

We do not agree that the inclusion of the foregoing language in the subsection regarding uninsured employers effectively precludes the Fund from utilizing all the defenses available to the employer in all other cases. Section 287.220.2 provides: "*In all cases* in which a recovery against the second injury fund is sought ..., the state treasurer ... shall be named as a party, and *shall be entitled to defend against the claim.*" (Emphasis added.) *See Totten,* 116 S.W.3d at 628. It can be inferred from this that the Fund shall be entitled to all available defenses in all cases. To claim lack of jurisdiction is to assert one of the most fundamental of defenses.

### Conclusion

We conclude, based upon our review of the whole record, that the Commission did not err in finding that Mr. Liberty failed to meet his burden of proof on the issue of jurisdiction. To the extent that the Commission decided the issue of jurisdiction, we affirm. To the extent that the Commission addressed the merits of the claim, we vacate that portion of the ruling as a legal nullity.

ELLIS and MORAN, JJ., concur.