

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| JEFFREY HICKS, | ) | ED108023 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| v. | ) | 14-004926 |
| | ) | |
| STATE OF MISSOURI, DEPARTMENT OF | ) | |
| CORRECTIONS, and | ) | |
| TREASURER OF MISSOURI AS | ) | |
| CUSTODIAN OF THE SECOND | ) | |
| INJURY FUND, | ) | |
| | ) | |
| Respondents. | ) | Filed: March 17, 2020 |

## **OPINION**

Jeffrey Hicks ("Hicks") appeals the decision of the Labor and Industrial Relations

Commission ("the Commission") denying temporary total disability ("TTD") benefits. We

reverse.

## **BACKGROUND**

Hicks began working on probationary status for the Regional Diagnostic Correctional

Center in Bonne Terre, Missouri ("Employer") as a corrections officer in late 2013. He was

required to complete both nine months of full-duty employment and a formal training program in

the classroom and on the job. On January 2, 2014, during defensive tactics training, Hicks suffered an injury to his left arm and shoulder when his partner attempted to place him in a hold and restraints.

Hicks reported his injury to the training staff but did not request medical treatment because he was concerned about losing his job if he did not complete the program. He attempted various home remedies, to include ice, stretching, and over-the-counter medications. However, his injury progressively worsened. Hicks finally requested medical treatment after an inmate approached him and asked, "Yo, CO, what's up with your wing?" He believed his injury made himself and others vulnerable in the prison.

Dr. Carl Killion began treating Hicks on January 30, 2014. An MRI showed a posterior labral tear and tendinosis of the cuff attachment. Employer sent Hicks to Dr. James Emanuel ("Dr. Emanuel"), an orthopedist who performed surgery on February 21, 2014. Following surgery, Hicks began physical therapy on March 3, 2014.

Dr. Emanuel repeatedly released Hicks as capable of one-arm duty from March 20, 2014 through July 2014. Unfortunately, due to the nature of the corrections officer position, Employer did not have any such light duty work available. As a result, Hicks' probationary period was extended through December 1, 2014. Despite continuing reports of pain in his shoulder and arm, Dr. Emanuel placed Hicks at maximum medical improvement ("MMI") and found him capable of working full duty without any restrictions on August 26, 2014.

When Hicks presented Dr. Emanuel's full duty release to the supervising sergeant, he reported his injured shoulder continued to pose a risk to himself and others. He requested light duty and stated he would gladly return to work as soon as his shoulder was "fixed." Hicks was again told that his position required full duty, to include completion of the defensive tactics

2

training, and that light duty work was not available. Hicks then requested additional treatment and a second medical opinion, which Employer denied.

Hicks testified he did not work after the end of August 2014; however, according to Employer's records, he worked September 13, 14, 19, 20, and September 21, 2014, was the last day Hicks reported to work. The record reflects Hicks subsequently failed to report his absences as required by Employer.

On October 7, 2014, Employer sent Hicks a letter informing him that due to his "ongoing, unauthorized absences," he must attend a pre-disciplinary meeting no later than October 22, 2014. On that date, Hicks stated he would not attend the mandatory meeting, again reiterating to Employer that he was waiting to see a workers' compensation doctor. On November 18, 2014, Dave Dormire, the director of adult institutions for Employer ("Director Dormire"), sent Hicks a letter stating he was terminated, effective November 25, 2014, for violating several of Employer's policies, specifically citing Hicks' unauthorized absences on September 10, 11, 12, 2014; exhaustion of paid leave; failure to request or be approved for leave without pay; and failure to report to work since September 21, 2014.

Hicks subsequently sought medical treatment for his shoulder and arm pain with Dr. Michael Snyder who conducted an independent medical examination on January 22, 2015. Dr. Snyder noted Hicks complained of aching pain from the anterior aspect of his shoulder down his arm to the bicep region. Dr. Snyder opined Hicks needed additional conservative medical treatment and possible exploratory surgery with a biceps tenotomy and tenodesis. Notably, on May 13, 2015, Dr. Snyder supplemented his initial report, stating Hicks was unemployable and unable to compete in the open labor market since his January 2014 injury, exactly confirming

3

what Hicks had reported to Employer both in August and again in October when he refused to return to work without further treatment.

On March 16, 2015, Employer authorized Hicks to return to Dr. Emanuel who further verified the February 2014 surgery failed to correct his injury. On April 1, 2015, Dr. Emanuel performed an extensive debridement of the glenohumeral joint and removal of scar tissue. Dr. Emanuel released Hicks to one-arm duty on April 7, 2015. On April 28, 2015, Dr. Emanuel placed Hicks at MMI and found him capable of working full duty without restrictions. Despite Dr. Emanuel's release, Hicks still believed his shoulder had not improved to the extent he could safely return to work. Hicks again requested additional medical treatment. Employer authorized Hicks to return to Dr. Emanuel on August 11, 2015, who suggested a second medical opinion.

On October 30, 2015, Hicks saw Dr. Christopher Lenarz who diagnosed a left shoulder bicipital labral complex injury with biceps strain and tendonitis. On December 17, 2015, Dr. Lenarz performed a left shoulder arthroscopy, biceps tenotomy, subacromial decompression and debridement, and biceps tenodesis. On February 10, 2016, approximately eight weeks after his third surgery due to his January 2014 workplace injury, Dr. Lenarz placed Hicks at MMI and found him capable of working full duty without restrictions. In fact, the parties ultimately stipulated Hicks reached maximum medical improvement ("MMI") on February 10, 2016. Hicks filed a claim for compensation against Employer, seeking to recover unpaid TTD until he reached MMI on the stipulated date of February 10, 2016. Employer argued it did not owe Hicks any TTD because Hicks was terminated after his injury for "post-injury misconduct" under Section 287.170.4.[1] The ALJ concluded Hicks' testimony was credible that he was absent from

---

[1] However, Employer paid Hicks TTD following each of his three surgeries. While employed, he received TTD of $1,248.50 from February 21, 2014, through March 24, 2014. Subsequent to his November 20, 2014 termination, Employer also paid Hicks TTD of $273.11 for the week following his April 1, 2015 surgery and the week following his December 17, 2015 surgery.

the workplace due to his injury and unable to return to any employment before he reached MMI on February 10, 2016, thus was entitled to TTD.

On Employer's application for review, a majority of the Commission adopted the ALJ's findings of fact, but disagreed Hicks was entitled to recover TTD benefits. The Commission found Hicks "was terminated from his post-injury employment for post-injury misconduct," because he failed to comply with Employer's policies by calling every day he was absent or make other arrangements with Employer; to request additional leave without pay; to respond to Employer's letters; and to attend his pre-disciplinary hearing held on October 22, 2014. This appeal follows.

## DISCUSSION

Each of Hicks' two points on appeal assert error in the Commission's interpretation of the term "misconduct" as used in Section 287.170.4 RSMo (2016).[2] In point one, he contends the Commission erred because Employer failed to meet its burden of proving his conduct rose to the level of misconduct because there was no evidence of deliberate or intentional wrongdoing. In point two, Hicks argues the Commission erred because its interpretation of the term "misconduct" improperly included absence from the workplace due to injury. Our review of point two is dispositive, thus we need not consider whether there was sufficient evidence of deliberate or intentional wrongdoing.

### *Standard of Review*

Section 287.495.1 states, in relevant part, that we shall only review questions of law and we may modify, reverse, remand or set aside the award only upon the following grounds:

(1) That the commission acted without or in excess of its powers;
(2) That the award was procured by fraud;

---

[2] All further statutory references are to RSMo (2016).

5

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

We look at the record as a whole and determine "whether the Commission could have reasonably made its findings and reached its result upon consideration of all the evidence before it." *Totten v. Treasurer of State*, 116 S.W.3d 624, 629 (Mo. App. E.D. 2003) (internal quotations omitted). Questions of statutory interpretation are reviewed *de novo*. *Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 686 (Mo. banc 2010).

## *Analysis*

Workers' compensation is a purely statutory creation. *Greer v. SYSCO Food Services*, 475 S.W.3d 655, 666 (Mo. banc 2015) (internal citation omitted). Thus, when interpreting workers' compensation law, we must determine the legislature's intent by giving the terms used in the statutes their plain and ordinary meaning. *Id*. If the language is clear and unambiguous, we give effect to the legislature's chosen terms. *Id*. However, if the language is ambiguous, we must resort to rules of statutory construction. *Id*.

Pursuant to Section 287.170, a claimant may be entitled to an award of temporary total disability which is "intended to cover the employee's healing period from a work-related accident until he or she can find employment or his [or her] condition has reached . . . [MMI]." *Thorsen v. Sachs Elec. Co.*, 52 S.W.3d 611, 621 (Mo. App. W.D. 2001), overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). TTD awards are unwarranted beyond the point at which the claimant is capable of returning to work. *Id*. The burden is on the claimant seeking benefits to prove he is entitled to TTD. *Id*.

Section 287.170.4 limits a claimant's recovery of TTD benefits "[i]f the employee is terminated from post-injury employment based upon the employee's post-injury misconduct." It

further states, "[a]s used in this section, the phrase **'post-injury misconduct'** shall not include absence from the workplace due to an injury unless the employee is capable of working with restrictions, as certified by a physician." Section 287.170.4 (emphasis in original).

The Commission modified the ALJ's award of TTD benefits based upon a finding that Hicks was terminated for post-injury misconduct. The Commission stated Hicks was not terminated "merely" because of his absences, but rather because he failed to follow the proper procedure to report the absences which constituted disqualifying "misconduct." This conclusion is contrary to the rules of statutory construction. Thus, the Commission's interpretation of the plain and ordinary language of Section 287.170.4 is erroneous.

The term "misconduct" is not specifically defined in Section 287.170.4; however, the statute expressly and unambiguously states misconduct "shall not include absence from the workplace due to an injury unless the employee is capable of working with restrictions as certified by a physician."[3]

Employer was not merely left to ponder why Hicks failed to appear for his scheduled shifts but, instead, was certainly on notice that he refused to return to work without further medical treatment. In fact, Employer never disputed the misconduct resulting in his termination for these absences was due to his injury. Of crucial importance, the record in this case is devoid of any evidence that Hicks was ever physically able to return to full duty—which is all Employer had available—after his workplace injury on January 2, 2014. Indeed, Dr. Emanuel, who deemed him at MMI on August 26, 2014, changed his medical opinion and subsequently determined the February 2014 surgery failed to correct the injury. As a result, the parties

---

[3] This case is complicated because light duty work was not available to Hicks. The statute allows an absence due to injury to constitute disqualifying misconduct if the employee is capable of working with restrictions, as certified by a physician, but continues to be absent despite an employer's offer to accommodate his light duty restrictions.

7

stipulated Hicks did not reach MMI until February 10, 2016. Thus, due to his undisputed inability to return to full duty, his absences resulted from his workplace injury.

The Employer could have reasonably terminated Hicks for his failure to follow policy. However, the argument that his termination also disqualifies Hicks from receiving TTD benefits under Section 287.170.4 must fail because the misconduct was predicated upon his "absence from the workplace due to an injury" which directly contravenes the statute's explicit exemption to "post-injury misconduct."

In conclusion, while we agree with the Commission that Employer could terminate Hicks for misconduct by failing to follow the proper procedure regarding reporting his absences, the plain language of Section 287.170.4 does not permit the corresponding denial of TTD benefits when the absences are related to an injury unless the employee was capable of working with restrictions as certified by a physician. As discussed above, Hicks was not capable of working with restrictions or otherwise until February 10, 2016, as stipulated by the parties. Thus, the Commission erred in its interpretation of Section 287.170.4 and its modification of the ALJ's award of TTD benefits to Hicks.

## CONCLUSION

The judgment of the Commission is reversed and remanded with instructions to reinstate

_____

the ALJ's award of temporary total disability benefits. Lisa P. Page, Judge


Philip M. Hess, P.J., and
Kurt S. Odenwald, J., concur.