

# Missouri Court of Appeals
## Southern District
### Division Two

HAROLD HEMBREE,                          )
                                         )
    Claimant-Appellant,              )
                                         )
vs.                                      )    No. SD32982
                                         )
TREASURER OF THE STATE OF                )    Filed July 2, 2014
MISSOURI, as Custodian of the            )
Second Injury Fund,                      )
                                         )
    Respondent-Respondent.           )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS BOARD

AFFIRMED

Harold Hembree ("Claimant") appeals the Labor and Industrial Relations Commission's ("Commission") decision in favor of the Second Injury Fund ("SIF") finding that Claimant was permanently totally disabled before his October 3, 2008 injury. Claimant contends that the Commission erred in reversing the decision of the Administrative Law Judge ("ALJ") because the Second Injury Fund did not present evidence from their own vocational expert witness supporting their position that Claimant had been previously rendered permanently totally disabled. Finding that the Second Injury Fund was not required to present its own vocational expert and deferring to the Commission's credibility determinations, we affirm.

**Factual and Procedural Background**

Claimant filed two claims against the Second Injury Fund: Injury Number 06-029777, pertaining to an injury occurring on March 3, 2006 ("2006 Injury"), and Injury Number 08-120622, pertaining to an injury occurring on October 3, 2008 ("2008 Injury"). Claimant was seeking permanent total or permanent partial disability benefits in both claims. Claimant had previously settled both claims against his employer, Jerry Bennett Masonry ("Employer"). A hearing before an ALJ on both claims took place May 23, 2012.

At the time of the hearing, Claimant was sixty years old and unemployed. He did not complete high school, having left while in the eleventh grade in order to work. Claimant thereafter worked the majority of his life as a bricklayer, operating his own company, Hembree Masonry, for twenty-one years and subsequently working for Employer. Claimant also worked briefly as a cattle farmer and as a concrete crew foreman.

On June 5, 2003, while working for Employer, Claimant fell five feet from scaffolding, and several heavy workplace items landed on top of him. As a result, Claimant experienced low back pain that occasionally extended into his buttocks and legs. Claimant also cut his head and cracked his ribs. Claimant settled a workers' compensation claim regarding this injury for 10 percent permanent partial disability to the body as a whole. According to Claimant, following this injury, he suffered chest, back, and bilateral leg pain and found it difficult to bend over or sit for long periods of time. Claimant was off work from the time of his injury until October 2003, when he returned to his job on light duty. Claimant fully returned to work without restrictions in December 2003, leaving Employer and working as a concrete crew foreman.

2

Claimant returned to Employer in 2006 and, on March 3 of that year, was again injured after falling to the ground from some scaffolding eighteen feet above. Claimant cracked three ribs and suffered a collapsed right lung, which required placement of a chest tube. Claimant further suffered comminuted intra-articular distal radius and ulnar fractures to his right wrist that were treated via closed reduction with placement of an external fixator. That wrist later developed post-traumatic carpal tunnel syndrome requiring carpal tunnel release. Additionally, Claimant injured his right shoulder; an MRI scan revealed a superior labrum anterior to posterior tear, severe tendinopathy of the supraspinatus, and arcomioclavical arthrosis. This injury was initially treated by injection in August 2006, but Claimant eventually underwent surgery the following December, which included a distal clavicle resection, biceps tenodesis, labral debridement, and subacromial decompression. At the same time, Claimant received a right hand and wrist manipulation due to recurring stiffness in that area.

Claimant continues to have severe stiffness in his right fingers and wrist, and Claimant is unable to make a closed fist with his right hand. He further has ongoing strength and range-of-motion loss in his right shoulder, which he cannot use without pain. Claimant also experiences pain and swelling in his right hip and leg, both of which were severely bruised in the 2006 Injury. Finally, Claimant continues to have pain in his right chest wall, as well as intermittent episodes of shortness of breath.

Following the 2006 Injury, Claimant was off work for almost eight months. Financial considerations eventually forced Claimant to return to work for Employer. Claimant's injuries prevented him from returning to work as a bricklayer, however, so he returned to Employer as a "tuck pointer" or "clean-up man." This position involved

3

sweeping floors, washing and cleaning bricks, and rubbing and smoothing walls in preparation for painting. Although ordinarily each bricklayer is responsible for completing these tasks individually, Employer created the exclusive "tuck pointer" position for Claimant because of his limitations.

Although Claimant is right-handed, the 2006 injuries to his right hand left Claimant with "hardly any use of it[,]" and Claimant was forced to rely almost exclusively on his left hand to perform his tuck-pointer duties. Because of the repetitive nature of those duties, Claimant went on to develop a ganglion cyst in his left hand, which prevented him from using his left hand to complete his work. While Claimant was told that surgery could remove the cyst, such surgery would result in Claimant temporarily losing the use of his left hand, rendering Claimant without the effective use of either hand for some time. Claimant therefore declined the surgery. As a result of the cyst, Claimant quit his tuck-pointer position with Employer on October 3, 2008, and filed a workers' compensation claim. The cyst has since decreased in size, but Claimant still experiences some stiffness in his left hand. Claimant has not worked since leaving his tuck-pointer position with Employer.

In connection with his workers' compensation claims, Claimant underwent evaluations by Dr. Brent Koprivica and Michael Lala, a vocational rehabilitation consultant. Dr. Koprivica first examined Claimant on June 2, 2004, following his initial injuries suffered in 2003, and again on November 3, 2007, following the 2006 Injury. Dr. Koprivica did not examine Claimant after the 2008 Injury, but he authored two addendum reports, one dated January 12, 2009, and another dated June 30, 2010.

4

Following the 2006 Injury, Dr. Koprivica assigned to Claimant a permanent partial disability rating of 50 percent of the body as a whole. This rating "assumes that [Claimant] is successful in sustaining employment[.]" Dr. Koprivica noted that Claimant was working on "an accommodated basis[,]" characterizing Claimant's tuck-pointing position as "very accommodated" and a "light duty position" for "anywhere from 20 to 40 hours per week." Dr. Koprivica noted Claimant's concern that the tuck-pointer position would be eliminated once the workers' compensation claim was settled.

In his 2009 addendum, Dr. Koprivica reiterated his previous concern regarding Claimant's ability to sustain employment and opined that Claimant would be "unable to sustain work that requires repetitive hand activities, especially on the right, in terms of normal dexterity." He further outlined numerous restrictions necessitated by the 2006 Injury that he believed would affect Claimant's employment prospects, including no repetitive pinching or grasping with the right hand, no repetitive right wrist flexion or dorsiflexion, no repetitive ulnar or radial deviation of the right wrist, avoidance of repetitive or sustained activities above the right shoulder girdle, and avoidance of climbing, squatting, crawling, or kneeling. Although Dr. Koprivica ultimately stated that he would defer to a vocational expert on the issue of Claimant's permanent total disability, he hypothesized that, if such an expert were to find Claimant permanently totally disabled because of the stated work restrictions, then it was Dr. Koprivica's opinion that the 2006 Injury was totally disabling "in isolation, in and of itself."

Michael Lala evaluated Claimant on May 5, 2008. He also authored an addendum to his report on April 27, 2011, although he did not meet with Claimant a second time. In his initial report, which relied upon his interview with Claimant as well

5

as Dr. Koprivica's 2007 report, Lala found Claimant to be permanently totally disabled. While Lala was aware that Claimant was employed as a tuck-pointer, he classified the job as a "light duty position" with "varied hours." Based upon Claimant's "age, education, past work experience, functional profile, vocational restrictions, and limited specific skills," Lala opined that Claimant could not be employed on a sustained and routine basis and that he would not be able to "realistically compete in the open labor market." Lala found Claimant to be "neither employable nor placeable[.]"

On February 5, 2009, Claimant settled his claim against Employer for the 2006 Injury for 50 percent permanent partial disability to the body as a whole. On June 23, 2010, Claimant settled his claim against Employer for the 2008 Injury for 14 percent permanent partial disability to the left wrist. These settlements left pending only Claimant's actions against the Second Injury Fund.

In his final addendum dated June 2010, Dr. Koprivica stated that Claimant was permanently totally disabled "based on the impact of combining all of the disabling conditions," including Claimant's 2008 Injury. Dr. Koprivica provided three reasons in support of this opinion: (1) Claimant "did not receive permanent total disability" for the 2006 Injury; (2) Claimant developed an "additional disability" subsequent to the 2006 Injury; and (3) Lala's 2008 vocational report found Claimant to be permanently totally disabled.

Lala, in his final addendum dated April 2011, "still believe[d]" Claimant to be neither employable nor placeable and that Claimant could not compete in the open labor market given his vocational limitations. Without specifically referencing the 2008 Injury, Lala opined that Claimant's permanent total disability was "clearly due to the

6

combination of all of his disabilities and the resulting vocational limitations which arise from his multiple injuries[.]"

Following the hearing, the ALJ found Claimant to be permanently totally disabled as the result of the 2008 Injury "in combination with the preexisting industrial disabilities." The ALJ specifically found Lala to have "credibly testified that [Claimant] was permanently and totally disabled . . . as a result of a combination of the October 3, 2008 occupational disease and the pre-existing medical conditions." The ALJ also noted that Dr. Koprivica had deferred to Lala's opinion as a vocational expert.

In reaching this decision, the ALJ specifically found Claimant 70 percent permanently partially disabled after the 2006 Injury; while this presented an obstacle to employment, the ALJ found that Claimant was still "able to work and engage in full employment as a tuck pointer because of his ability to utilize his left upper extremity, which allowed him to compensate for the limitations involving his right upper extremity." The ALJ relied on Claimant's inability to work in a non-physical sedentary work environment, as well as the testimony of both Dr. Koprivica and Mr. Lala, in determining that Claimant was unable to compete in the open labor market as a result of the 2008 Injury, in combination with Claimant's previous injuries.

The Second Injury Fund timely filed an application for review with the Commission on the 2008 Injury; no petition for review was filed by any party regarding the ALJ's decision on the 2006 Injury. After a review of both parties' briefs and the record as a whole, the Commission reversed the finding of the ALJ as to the 2008 Injury, finding that Claimant was already permanently totally disabled before his 2008 Injury. In reaching its finding, the Commission relied upon the expert opinions of both Dr.

7

Koprivica and Lala. The Commission noted that both experts knew of Claimant's tuck-pointer duties and viewed the job as "clean-up work [that] amounted to light or accommodated duty." The Commission relied heavily on Lala's May 2008 opinion that Claimant was permanently totally disabled and, while it commended Claimant on his work ethic, nevertheless expressly found that opinion persuasive. The Commission did not find persuasive Dr. Koprivica's June 2010 addendum and later testimony finding Claimant to have been rendered permanently totally disabled only after the 2008 Injury, noting that Dr. Koprivica relied on Lala's May 2008 report in reaching that conclusion and contradicted his own statement that he would rely upon the opinion of a vocational expert in determining whether Claimant was permanently totally disabled. While the Commission acknowledged that Lala's 2011 addendum stated that Claimant's permanent total disability was a result of "all of his disabilities resulting from his multiple injuries[,]" and that Lala's deposition testimony noted that the 2008 Injury was included in the analysis in the 2011 addendum, the Commission nevertheless found Lala's new opinion unpersuasive.

The Commission further stressed that Claimant's position as a tuck-pointer was not "work obtained through competition in the open labor market." While it acknowledged that Claimant returned to work for Employer after the 2006 Injury, the Commission observed that the tuck-pointer position was created for Claimant by Employer, and the Commission was "persuaded that no reasonable employer would be expected to hire [Claimant] given his physical condition" after the 2006 Injury.

Because the Commission found that Claimant was permanently totally disabled before the 2008 Injury, the Commission reversed the ALJ's order and concluded that the

8

SIF was not liable to Claimant for permanent total disability benefits. Claimant now timely appeals.

## Standard of Review

We are guided in our review by section 287.495.1, RSMo 2000, which establishes the standard of review in workers' compensation claims and, in pertinent part, states,

> Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the [C]ommission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the [C]ommission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the [C]ommission do not support the award; [or]
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

"A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award[.]" *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003). "This standard would not be met in the rare case when the award is contrary to the overwhelming weight of the evidence." *Id.* at 223. "We defer to the Commission on issues of fact, witness credibility, and the weight given to conflicting evidence." *Hager v. Syberg's Westport*, 304 S.W.3d 771, 773 (Mo.App. 2010). "If the evidence before the Commission would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding." *Pavia v. Smitty's Supermarket*, 118 S.W.3d 228, 234 (Mo.App. 2003) (internal quotation marks omitted). We do not, however, defer to the Commission on issues of law, which we

9

review *de novo.* ***Difatta-Wheaton v. Dolphin Capital Corp.***, 271 S.W.3d 594, 595 (Mo. banc 2008).

**Discussion**

In his sole point on appeal, Claimant contends:

> The Commission erred in finding that the [Claimant] was not permanently and totally disabled as a result of the October 2008 injury in combination with [Claimant's] preexisting conditions and its findings are not supported by substantial and competent evidence in that the Second Injury Fund offered no vocational expert opinion and [Claimant] provided the only expert vocational opinion in support of permanent and total disability as a combination of the last injury and preexisting conditions.

We disagree.

"The claimant [in a workers' compensation claim] bears the burden of proving all essential elements of his claim[.]" ***Liberty v. Treasurer for State of Missouri-Custodian of Second Injury Fund***, 218 S.W.3d 7, 11 (Mo.App. 2007). "[T]he party not having the burden of proof on an issue need not offer any evidence concerning it." ***White v. Dir. of Revenue***, 321 S.W.3d 298, 305 (Mo. banc 2010) (internal quotation marks omitted). Therefore, the SIF was under no obligation to produce any evidence whatsoever regarding Claimant's workers' compensation claim, including any vocational expert testimony. Claimant cites us to no relevant legal authority holding otherwise.

Moreover, an *ex gratia* review of the record reveals that the Commission's finding that Claimant was permanently totally disabled before the 2008 Injury was based on a credibility determination that we cannot disturb on appeal.

> [W]hether a particular employee is permanently and totally disabled is a factual, not a legal question. [O]ur inquiry into permanent-total disability is a factual one: whether Claimant is employable. We will not substitute our judgment on issues of fact where the Commission was within its powers, even if we would arrive at a different conclusion.

10

*Molder v. Mo. State Treasurer*, 342 S.W.3d 406, 409 (Mo.App. 2011) (internal quotation marks omitted). "The Commission is free to reject all or part of a claimant's testimony [that] it does not consider credible, and may disregard a witness's testimony even if no contradictory or impeaching evidence is introduced." *Liberty*, 218 S.W.3d at 13 (internal citations omitted). Thus, the Commission was within its authority to accept as true Lala's May 2008 opinion that Claimant had been rendered permanently totally disabled before the 2008 Injury, while expressly finding as unpersuasive Dr. Koprivica's later deposition testimony and June 2010 addendum finding Claimant's permanent total disability the result of a combination of Claimant's 2006 and 2008 injuries. Aside from Dr. Koprivica's 2010 addendum and later testimony, the remainder of Claimant's argument on this point relies upon his own self-serving testimony regarding the type and intensity of his employment following the 2006 Injury, which the Commission was free to give little, if any, weight as compared to the weight given to the experts' testimony.[1] *See id.* Claimant's point is denied.

## Decision

The Commission's finding that Claimant was permanently totally disabled prior to the 2008 Injury is affirmed.

GARY W. LYNCH, J. - Opinion author

JEFFREY W. BATES, P.J. - concurs

---

[1] Claimant does briefly mention Lala's 2011 addendum in support of his claim, as well, specifically noting that Lala found Claimant's permanent total disability to be the result of a combination of all of Claimant's multiple injuries; Lala's later deposition testimony revealed that even though not expressly referenced in his 2011 addendum, he did include the 2008 Injury in that analysis. However, just as the Commission was free to believe Lala's 2008 report and disbelieve Dr. Koprivica's addendums and testimony, it was likewise free to believe Lala's 2008 report and disbelieve his later addendum and testimony. *See Liberty*, 218 S.W.3d at 13.

MARY W. SHEFFIELD, J. - concurs